Susan L. BOUMAN, on behalf of herself and all others similarly situated, Plaintiff-Appellee,

v.

Sherman BLOCK,* Sheriff of Los Angeles County; County of Los Angeles; Los Angeles County Sheriff's Department; Herbert Kaplan, Director of Personnel for Los Angeles County; Los Angeles County Department of Personnel; Los Angeles County Civil Service Commission; Frank A. Work, John C. Bollens, Louise L. Frankel, James E.

---

* Sherman Block, Sheriff of Los Angeles County, was substituted for Peter Pitchess, the former

Kenney, George S. Nojima, in their Capacity as Members of the Los Angeles County Civil Service Commission; Marie Quinney; John P. Knox; Association for Los Angeles Deputy Sheriffs, Defendants-Appellants.

Susan L. BOUMAN, on behalf of herself and all others similarly situated, Plaintiff-Appellant,

v.

Sherman BLOCK, Sheriff of Los Angeles County; County of Los Angeles; Los Angeles County Sheriff's Department; Herbert Kaplan, Director of Personnel for Los Angeles County; Los Angeles County Department of Personnel; Los Angeles County Civil Service Commission; Frank A. Work, John C. Bollens, Louise L. Frankel, James E. Kenney, George S. Nojima, in their Capacity as Members of the Los Angeles County Civil Service Commission; Marie Quinney; John P. Knox; Association for Los Angeles Deputy Sheriffs, Defendants-Appellees.

Nos. 88–6009, 88–6010, 88–6458, 89–55448, 89–55784 and 88–55130.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 1990.

Decided July 23, 1991.

Los Angeles County Sheriff, as the real party in interest pursuant to F.R.A.P. 43(c)(1).

Alan N. Terakawa, Deputy County Counsel, Los Angeles, Cal., for defendants-appellants-cross appellees.

Dennis M. Harley, Pasadena, Cal., for plaintiff-appellee-cross appellant.

Before D.W. NELSON and REINHARDT, Circuit Judges, and SINGLETON **, District Judge.

** The Honorable James R. Singleton, United States District Court Judge for the District of Alaska, sitting by designation.

1217

**D.W. NELSON, Circuit Judge:**

Plaintiff-appellee Susan Bouman filed a suit in federal court on April 7, 1980, alleging that defendants-appellants Sherman Block, the Los Angeles County Sheriff who was substituted as the real party in interest for Peter Pitchess, the former Sheriff; the County of Los Angeles; the Sheriff's Department; John Knox, Chief of the Administrative Division of the Los Angeles County Sheriff's Department; the Association for Los Angeles Deputy Sheriffs and several other named defendants (herein collectively referred to as "the County") engaged in sex discrimination against her. Bouman filed her claim on behalf of herself and a class of potential female applicants for the position of sergeant. She alleged violations of 42 U.S.C. § 1983, Cal.Gov. Code § 12900 *et seq.* and Title VII.

The trial court found that the County had discriminated against Bouman and the class members and ordered that the County develop valid sergeant examinations, as well as pay plaintiffs' attorney's fees and costs. Defendants-appellants appeal from that judgment.

To determine whether the County of Los Angeles may be sued in this case, we remand to the district court for findings of fact and conclusions of law on who possesses the authority to make employment policy decisions for the Sheriff's Department. We also remand for a statement of reasons why the class was denied back pay, for an articulation of the reasons justifying the imposition of punitive damages against Knox, for a determination of whether plaintiff is entitled to a multiplier of attorney's fees over the one and one-third multiplier awarded, and for a determination of whether there was good cause for plaintiff's untimely filing for costs. If the court determines the bill of costs was timely, the district court's decision to award costs is affirmed. The district court's findings and holding on all other issues raised in this appeal are affirmed.

## FACTS

Susan L. Bouman was hired by the County of Los Angeles as a Deputy Sheriff in 1971. In 1974 she applied for a promotion to sergeant and took a three-part examination in 1975 to qualify for promotion.

From the examination score an eligibility list was developed and used for two years. At the time the list expired on May 21, 1977, Bouman was at the top of the list and would have received the next appointment. From the list, four females and 127 males were promoted. Bouman was not promoted from this list.

Prior to the list's expiration, plaintiff inquired of her chances of appointment. Bouman testified that her superior, Lieutenant Geiger, "basically told her not to hold her breath." Others in the department also knew that Bouman was not likely to be promoted. One deputy from another station who was behind Bouman on the eligibility list called her because he heard that she was not going to be promoted and was concerned about how this would affect his promotion chances.

Bouman presented evidence at trial based on an internal investigation in the Sheriff's Department that there were vacancies to which she could have been promoted. She alleges that the County hid the fact that there were vacancies and suppressed a January 25, 1978 report by Lt. Maher which discussed those job openings.

Another sergeant examination was administered in 1977, but Bouman did not take it because she believed it would be futile and that the testing procedures discriminated against women. However, Bouman took the 1980 sheriff's examination and after filing the instant action was promoted on July 26, 1981.

On January 3, 1978, 217 days after the 1975 promotion list expired, Bouman mailed a complaint to the California Fair Employment Practices Commission alleging sex discrimination by the Sheriff's Department in its promotion practices. On January 17, 1978, the California agency issued an accusation letter charging the County with discrimination. That letter was withdrawn six months later and defendant was given a right-to-sue letter. Bouman filed a complaint in federal court on

April 7, 1980, charging violations of Title VII, 42 U.S.C. § 1982 and Cal.Gov.Code § 12900. She named several defendants including the Los Angeles County Sheriff, the County itself, the Sheriff's Department and several other individuals who worked for the County or the Sheriff's Department or were members of the Civil Service Commission.

Plaintiff sued on behalf of herself and a class of similarly situated persons. That class was certified as:

a) all females who have been, are or will be applicants for promotion to or employees in, sworn, uniformed positions in the Los Angeles County Sheriff's Department;

b) all females who would have been or would be in the future applicants for promotion to, or employees in, sworn, uniformed positions in the Los Angeles County Sheriff's Department but for defendant's allegedly illegal promotion practices;

c) all females who have been, are, or will be applicants for transfer to any and all sworn, uniformed job classifications maintained by the Los Angeles County Sheriff's Department;

d) all females who would have been or would be in the future applicants for transfer to any and all sworn, uniformed job classifications maintained by the Los Angeles County Sheriff's Department.

Bouman brought several claims on behalf of herself and the class. For the class, she alleges that the sergeant examinations discriminated against women. She argued that the design of the 1975 examination was flawed. Bouman submitted statistical evidence showing that the examination had a disparate impact on women. The County admits that women deputies suffered an adverse impact on the written portion of the 1975 examination, but contends that any differences in performance are not statistically significant and are explained by nondiscriminatory factors such as job experience. Bouman also contends that defendants-appellants engaged in intentional discrimination against her and retaliated against her for filing a claim with the EEOC.

Plaintiff contends that job experiences in the Sheriff's Department were not gained in a neutral fashion, citing the discriminatory assignments she endured. Bouman was not permitted to serve in a solo radio car at night in certain areas because her supervisors felt it would be inappropriate. Meanwhile, male deputies were allowed to serve in such areas. The station commander also had a policy of having women deputies rotate on the station complaint desk. At one point, she was told to leave a radio car and work the station front desk. Men were not required to rotate on the front desk. The statute of limitations bars a cause of action based on this evidence, but the evidence may provide relevant background information in determining present discriminatory action. *United Air Lines v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977).

The district court found that the County engaged in retaliatory discrimination against Bouman for filing her complaint with the EEOC. The court also found that the County used discriminatory examinations which had a disparate impact on women, and engaged in intentional discrimination against Bouman by failing to promote her to sergeant, though sergeant positions were available.

## DISCUSSION

### I. Timely Filing of EEOC Claim

Appellants argue that Bouman's complaint with the EEOC was time-barred because she did not comply with the statutory requirements for filing. Legal questions relating to a Title VII or similar sex discrimination claim are reviewed de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). A district court's underlying findings of fact are subject to a clearly erroneous standard of review. Fed.R.Civ.P. 52(a); *Anderson v. City of Bessemer City*, 470

U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

In order to file a claim with the EEOC under Title VII, complainants must first satisfy two jurisdictional prerequisites. They must file the complaint with the EEOC within 180 days after the last discriminatory act. 42 U.S.C. § 2000e–5(e). However, if the aggrieved person has instituted proceedings with a state or local agency with authority to grant or seek relief from such practices, complainants are allowed 300 days to file with the EEOC. *Id.*

On January 3, 1978, Bouman mailed a complaint to the California Division of Fair Employment Practices ("DFEP") [now the Department of Fair Employment and Housing]. She received a return receipt from that office on January 4, 1978, but for some reason, the DFEP shows no record of receiving it. Bouman refiled her complaint with the DFEP on January 17, 1978.

At the same time she mailed the complaint to the DFEP, Bouman also mailed a complaint to the EEOC. On January 10, 1978, the EEOC forwarded the charge to the DFEP along with a letter indicating they would defer to the California agency.

■ Bouman contends that her charge with the DFEP was effectively filed on January 10, 1978, when the EEOC forwarded the charge. The County contends that her complaint was not filed until January 17, 1978, the date the DFEP docketed as the filing date. This factual issue determines when the statute of limitations tolls and whether Bouman's claim is time-barred.

The district court noted that under *Saulsbury v. Wismer & Becher, Inc.*, 644 F.2d 1251, 1255–56 (9th Cir.1981), state proceedings can be considered initiated on the date the charge is received by the EEOC, if the EEOC promptly defers to the state agency. The Supreme Court determined in *Mohasco Corp. v. Silver*, 447 U.S. 807, 816, 100 S.Ct. 2486, 2492, 65 L.Ed.2d 532 (1980), that the EEOC institutes state proceedings when it forwards the complainant's letter

to the state agency. The district court found that the EEOC sent the letter and the charge on January 10th and accepted that as the DFEP filing date. The district court applied the correct legal standard and its findings of fact on this issue are not clearly erroneous.

■ Appellants claim that there is no evidence that the charge was received along with the deferral letter. However, we held in *Saulsbury* that no particular formal "charge" is required to institute proceedings. 644 F.2d at 1255. Even if the EEOC refers a complaint to a state agency orally, that communication will suffice to institute state proceedings. *Love v. Pullman*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). It is not necessary to show that the charge itself was forwarded on January 10 along with the EEOC's deferral letter.

The rule of *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, requiring that a state agency be given sixty days in which to consider the charges before the charges may be filed with the EEOC, does not apply to this case. We decided in *Wiltshire v. Standard Oil Co. of California*, 652 F.2d 837, 842 (9th Cir.1981), *cert. denied*, 455 U.S. 1034, 102 S.Ct. 1737, 72 L.Ed.2d 153 (1982), that *Mohasco* would not apply retroactively to any charge filed before June 23, 1980. Bouman filed the complaint in this action on April 7, 1980, so the sixty-day *Mohasco* rule is inapplicable.

Bouman effectively filed her complaint with the EEOC on January 10, 1978, 224 days after the discriminatory act, a date well within the 300–day limit specified by law. Even if the *Mohasco* rule were applied, Bouman would have filed her complaint 284 days after the discriminatory act, a date still within the 300–day limit.

The County contends that the 300–day extension is triggered only where plaintiffs "*initially* instituted proceedings with the state or local agencies." 42 U.S.C. § 2000e–5(e) (emphasis added). Because she filed first with the EEOC and not with the state, they argue that the 300–day extension is unavailable to Bouman.

In *Wiltshire*, we rejected the argument that state proceedings must be commenced within 180 days to trigger the 300–day extended filing period. 652 F.2d at 839. We noted that "the deferral state exception requires only that state proceedings be instituted before the expiration of the 300–day extended filing period." *Id.* Since the EEOC deferred jurisdiction to the state within 300 days, the extension period is triggered regardless of whether the complaint was first received by the EEOC or the state. The district court did not err in concluding that Bouman's EEOC complaint was timely filed and that her Title VII claim was not time-barred.

The County also argues that Bouman's state law claims are barred because the DFEP did not issue an accusation within the one-year period required by California Labor Code § 1422.2. The agency promulgated an accusation on January 17, 1979, seven days later than California law requires. The County contends that this bars Bouman's claims under the California Fair Employment Practices Act ("FEPA"), even those raised under the pendent jurisdiction of the court.

We have recognized that state time limits on filing court actions or other similar filing deadlines should generally be treated as statutes of limitations subject to the doctrine of equitable tolling, rather than jurisdictional prerequisites which divest the court of jurisdiction to hear the case if they are not met. *Salgado v. Atlantic Richfield Co.*, 823 F.2d 1322, 1324 (9th Cir.1987). We hold that the one year deadline for the state to issue an accusation is not a jurisdictional prerequisite which divests the courts of jurisdiction to hear the claim. We now determine whether to apply the equitable tolling doctrine.

The California legislature has directed that FEPA be construed liberally so as to accomplish its purposes. Cal.Gov. Code § 12993; *Goldman v. Wilsey Foods Inc.*, 216 Cal.App.3d 1085, 265 Cal.Rptr. 294 (1989). Throughout these proceedings, Bouman has demonstrated diligence in pursuing her claims. *Salgado*, 823 F.2d at

1324. She had to await the issuance of a right-to-sue letter in order to file a civil claim. *Id.* The seven-day delay no doubt resulted from the confusion over the actual filing date of her state claim and did not result in appellants being confronted with a stale claim. Nor did it deprive appellants of an opportunity to preserve appropriate evidence. *Id.* Under these circumstances, we think that allowing Bouman to proceed despite the late issuance of the accusation is consistent with the specific purposes of the time period imposed by the California legislature. *See id.*

Furthermore, the late accusation has no impact on her federal claims. *E.E.O.C. v. Commercial Office Products Co.*, 486 U.S. 107, 122–25, 108 S.Ct. 1666, 1674–1676, 100 L.Ed.2d 96 (1988), prohibits the use of state law limitations periods for filing discrimination actions to defeat Title VII causes of action. The fact that the state failed to issue an accusation within one year of the effective date of filing should not defeat her right to pursue a federal claim. *See id.* This is especially true since any delay occurred through no fault of Bouman's.

## II. Standing

### A. *Standing to Challenge the 1975 Sergeant Examination*

The County contends that plaintiff's claim challenging the 1975 examination as discriminatory is time-barred. The critical question is whether the Sheriff's Department, within 300 days prior to the date Bouman filed her charge (January 10, 1978), engaged in the unlawful conduct of failing to promote women in situations where men would be promoted. *Scott v. Pacific Maritime Assoc.*, 695 F.2d 1199, 1204 (9th Cir.1983).

Findings of fact in a Title VII discrimination claim may be overturned on appeal only if they are clearly erroneous. *Anderson v. City of Bessemer*, 470 U.S. 564, 565, 573, 105 S.Ct. 1504, 1507, 1511, 84 L.Ed.2d 518 (1985). Legal questions are reviewed de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.)

(en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The County contends that the time bar dates from the administration of the 1975 examination and the promulgation of the eligible list on May 3, 1975. Bouman contends that May 21, 1977, the date the eligible list expired, is the appropriate date from which to mark time for statute of limitations purposes because she could have been promoted from the list until that date. The district court agreed with Bouman's theory and found that appellants discriminated against her by failing to promote her by the time the 1975 list expired.

In *Delaware St. College v. Ricks,* 449 U.S. 250, 256–58, 101 S.Ct. 498, 503–504, 66 L.Ed.2d 431 (1980), the complaint of a professor who was denied tenure and then given a one-year contract, after which he was terminated, was held to be time-barred. The Court found that the tenure decision, not the one-year contract expiration, was the "unlawful employment practice" at the base of his claim. Similarly, in *Bronze Shields Inc. v. New Jersey Dept. Civ. Serv.,* 667 F.2d 1074, 1080 (3rd Cir. 1981); *cert. denied,* 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982), plaintiffs took and failed an examination used to determine promotion eligibility. The court distinguished between the decision (the examination) and its effects (the eligible list and its appointments therefrom). The Third Circuit held that the plaintiffs knew they would not be hired when the eligibility roster was issued. The court determined that the allegedly discriminatory employment practice occurred when the eligibility list was released, not when the list expired.

The Supreme Court affirmed this view in *Lorance v. AT & T,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), when it held that limitations periods on a civil rights claim based on a discriminatory seniority system run from the date the system was adopted. As *Ricks* states, where "the only challenged employment practice occurs before the termination date, the limitations periods necessarily commence to run before that date." 449 U.S. at 259, 101 S.Ct. at 505. The crucial issue in this case is whether Bouman's non-appointment from the eligible list was a separate injury from the allegedly discriminatory examination itself.

██ The County analogizes Bouman's case to *Ricks,* contending that the examination's administration and the issuance of the eligibility lists are the relevant events, not the expiration of the list. Bouman's case is distinguishable from *Ricks* and *Bronze Shields* because in those cases plaintiff's termination or non-promotion was a delayed but inevitable result of being denied tenure or not scoring well enough on the exam. In Bouman's case, by contrast, not until the list expired was it certain that she would not be promoted. She did not know until that date that she had suffered an injury. The eligible list expired within 300 days of the date Bouman filed her EEOC and California state discrimination claims. Appellee satisfies the timeliness requirements under *Ricks, Lorance* and *Bronze Shields.*

## B. Standing to Challenge the 1977 Examination

The County contests Bouman's standing to challenge the 1977 sergeant examination as discriminatory under Title VII. Bouman did not apply for that examination, and the county claims the class is deficient without a representative who took and failed any part of that examination and timely filed a claim.

Under *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 364–67, 97 S.Ct. 1843, 1869–1871, 52 L.Ed.2d 396 (1977), a person may have standing in a Title VII action to challenge discriminatory practices even if she did not apply for the position she claims was closed to her because of discrimination. A plaintiff is not barred from bringing such an action where "an application would have been a useless act serving only to confirm a discriminatee's knowledge that the job he wanted was unavailable to him." *Id.* at 367, 97 S.Ct. at 1870.

██ The district court found that it would have been futile for Bouman to take

the 1977 examination and concluded that she had standing to challenge the examination. Under Federal Rule of Civil Procedure 52(a): "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." *See Anderson v. Bessemer City*, 470 U.S. at 573, 105 S.Ct. at 1511.

■ The County makes two evidentiary objections to Bouman's testimony at trial that she did not take the 1977 examination because she was told she would not be promoted. The County objected at trial to this testimony as hearsay, inadmissible to prove the truth of the matter asserted. Evidentiary rulings are reviewed for an abuse of discretion and will not be reversed absent some prejudice. *Roberts v. College of the Desert*, 870 F.2d 1411, 1418 (9th Cir.1989).

■ The County acknowledges that the contested statement might be admissible to show plaintiff's state of mind in deciding whether or not to take the examination. Since it can plausibly be admitted under this exception to the hearsay rule, the district court's decision to admit this testimony was not an abuse of discretion.

The County also contends that even if this statement is admissible, it is not credible because it is inconsistent with her prior written statement that after she failed to file for the 1977 exam, she did not pursue her appeal of her 1975 score because she was told she would be promoted. The County reads this statement to mean that she did not take the 1977 examination because she believed she would be promoted based on her 1975 score. Bouman's statement, however, is confined to her reasons for not appealing her 1975 score. It does not touch upon why she failed to register for the 1977 exam and does not contradict her later statements about the futility of the 1977 exam.

Even if we were to read the statements as contradictory, we would apply the deferential clearly erroneous standard to the district court's findings about the real rea-

son a nonapplicant failed to apply for a position. *Polykoff v. Collins*, 816 F.2d 1326, 1331 (9th Cir.1987); *Hervey v. City of Little Rock*, 787 F.2d 1223 (8th Cir.1986). Where "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574, 105 S.Ct. at 1511. The district court could have plausibly determined that her oral testimony was more credible than her written statement about her reasons for not applying for the 1977 examination. The district court did not commit clear error in crediting Bouman's testimony on this issue.

Alternatively, the County contends that Bouman's subjective belief in the 1977 examination's futility is not enough under *Teamsters*, 431 U.S. 324, 97 S.Ct. 1843. However, in *Teamsters*, the Supreme Court recognized that in only a few cases will there be objective evidence of discrimination such as the posting of a "Whites Only" sign on the hiring door. More often, potential applicants may discern subtle signs of discrimination. *See id.* at 365, 97 S.Ct. at 1870. The Court's reference to a discriminatee's "knowledge" that the job he wanted was unavailable to him supports the contention that a subjective evaluation of the examination's futility is permissible. *Id.* at 367, 97 S.Ct. at 1871.

The County argues that the district court based its futility determination on the disparate impact of the 1977 examination. They point out that Bouman could not have known in advance that the examination would have a disparate impact on women. They argue that the court worked backwards from a finding of disparate impact to a finding of futility in taking the exam.

The record shows that the district court relied on Bouman's testimony about why she did not take the exam to determine whether she believed that taking it would be futile. This testimony itself is sufficient to establish her standing under *Teamsters* to challenge the 1977 sergeant's examination. The district court's findings about the examination's ultimate futility do not affect her standing to bring this claim.

III. Findings of Sexual Discrimination

A. *Overview*

Bouman brings three separate claims under Title VII. First, she claims that the County intentionally discriminated against her by failing to promote her to existing sergeant vacancies while she was on the eligible list. Second, she contends that the sergeant examinations, a facially neutral device, have a significant adverse impact on women. Third, she argues that the County retaliated against her for filing her EEOC claims. The district court found for Bouman on the first and third claims, for the class on the second claim, and awarded Bouman back pay for her intentional discrimination claim.

■ The County argues that Bouman failed to establish a *prima facie* case of employment discrimination on any of these theories. If the trial court had granted summary judgment against Bouman or the County's motion to dismiss, on appeal we would determine whether plaintiff had established a *prima facie* case that would preclude pre-trial adjudication. However, this case was tried and decided after both sides presented evidence. Once a Title VII case proceeds to judgment the issue is no longer whether plaintiff has established a *prima facie* case, but whether there was discrimination. *See United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 713–14, 103 S.Ct. 1478, 1480–1481, 75 L.Ed.2d 403 (1983). Appellants ask us to decide whether the trial court's findings of fact are supported by substantial evidence. *See Anderson,* 470 U.S. 564, 105 S.Ct. 1504. Those findings should be overturned only if there was clear error. *Id.* at 573, 105 S.Ct. at 1511.

B. *Sufficiency of the Evidence of Intentional Discrimination*

■ The County challenges the sufficiency of the evidence supporting Bouman's claim of intentional employment discrimination. We evaluate the sufficiency of the evidence of employment discrimina-

tion for clear error. *Anderson,* 470 U.S. at 573, 105 S.Ct. at 1511.

To establish a *prima facie* case for employment discrimination, plaintiff must show that: 1) she belongs to a protected group; 2) application was made for the job for which the employer was seeking applicants; 3) despite plaintiff's qualifications for that job, she was rejected; and 4) after plaintiff was rejected, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The employer must then show a legitimate, non-discriminatory reason for the challenged employment action. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). Plaintiff must then persuade the court that a discriminatory reason more likely motivated the employer, or that the employer's proffered explanation is unworthy of credence. *Id.*

■ However, "when the defendant fails to persuade the district court to dismiss the action for lack of a *prima facie* case, and responds to the plaintiff by offering evidence of the reason for the plaintiff's rejection, the factfinder must then decide whether the rejection was discriminatory within the meaning of Title VII." *Aikens,* 460 U.S. at 714–15, 103 S.Ct. at 1481–1482. Whether a *prima facie* case was made is no longer relevant. *Id.* at 715, 103 S.Ct. at 1482. "The district court has before it all the evidence it needs to decide whether 'the defendant intentionally discriminated against the plaintiff.'" *Id.* (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093).

■ The County contends that the district court erred in concluding that Bouman was treated differently than similarly situated male employees. They argue that the County demonstrated a legitimate, non-discriminatory reason for her non-appointment—the lack of a permanent, funded vacancy for a sergeant at the time Bouman was eligible for promotion. The County

argues that the district court erred in finding intentional discrimination after considering all the evidence.

The County presented evidence that no vacancy existed at the time the list expired. In response to a Los Angeles County Civil Service Commission ("CSC") inquiry, Chief Knox prepared a report on May 20, 1977, based on the weekly vacancy reports. The May 20, 1977 report indicated that there existed 926.5 authorized sergeant positions for the Sheriff's Department while only 902 sergeants were actually in service. Knox testified that these figures did not account for officers who were on extended leaves of absence because of vacation or illness. Deputy Rollins, who was responsible for counting vacancies, testified at trial that as of May 19, 1977, the Department had over-promoted by three sergeant positions.

In reaching its conclusion that vacancies existed, the district court relied on a January 1978 report by Lt. Maher concerning Bouman's charges of sex discrimination. Maher's report indicated that vacancies did exist at the time the list expired. *Bouman*, 42 EPD at 46,311. Captain Turner testified that this report was forwarded to Inspector White and Chief Knox. Lt. Maher testified that he met with Knox to discuss the report. Yet, Knox and White testified that they were not aware of any documents prepared by the Sheriff's Department after May 1977 indicating that there were vacancies.

The County attacks Maher's credibility as a witness by pointing out that he worked with Bouman in his private business and consulted with her about preparing for litigation. Determinations about a witness' credibility should be left to the district court and not overturned except for clear error. *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511. The district court could plausibly have concluded that Maher's testimony was more credible than the defense's. This is particularly true in light of the fact that Chief Knox's report, which the County relies upon to show the lack of vacancies, speaks of several sergeant vacancies. In considering the written evidence and the credibility of the witnesses,

the district court did not commit clear error in reaching its decision.

The district court also noted that Chief Knox could not point to any other records to indicate the true vacancy rate. *Bouman*, 42 EPD at 46,311. The district court held that a preponderance of the evidence proved that vacancies existed to which Bouman should have been promoted. The trial court also concluded that the attempts to suppress Maher's report supported the inference of sex discrimination. *Id.* The district judge concluded that she was the victim of intentional sex discrimination and awarded her back pay from May 21, 1977, the date the promotion list expired.

The evidence supports the trial court's ultimate conclusion that the County engaged in intentional sex discrimination by failing to promote her to sergeant, even though vacancies were available. The district court did not commit clear error in awarding her back pay on that basis.

### C. *Disparate Impact Claim: The 1975 and 1977 Sergeant Examinations*

The district court also found that appellants discriminated against Bouman and the class plaintiffs through the 1975 and 1977 examinations, which had a disparate impact on women. The County argues that the findings of adverse impact were in error. We now consider whether the evidence is sufficient to support the district court's conclusion.

[19] The County argues preliminarily that plaintiff must show *uncontroverted* evidence to establish disparate impact. This argument is without foundation. *Contreras v. City of Los Angeles*, 656 F.2d 1267 (9th Cir.1981) held only that where the evidence is uncontroverted, a *prima facie* case is established. *Id.* at 1275. It established no requirement that statistical evidence be uncontroverted to establish a *prima facie* case. Moreover, after trial we review whether the verdict was supported by substantial evidence, not whether the plaintiff established a *prima facie* case sufficient to withstand pre-trial judgment. *Aikens*, 460 U.S. at 713–14, 103 S.Ct. at 1480–1482.

■ The federal agency guidelines for the establishment of statistical proof require a showing that the protected group is selected at less than four-fifths or 80 percent of the rate achieved by the highest scoring group. 28 C.F.R. § 50.14 at § 4(d) (1977). This is the so-called "80 percent rule." We have criticized these guidelines, *see Clady v. County of Los Angeles,* 770 F.2d 1421, 1428 (9th Cir.1985), noting that they were not promulgated as regulations and do not have the force of law. Rather than using the 80 percent rule as a touchstone, we look more generally to whether the statistical disparity is "substantial" or "significant" in a given case. *Id.* at 1428–29, (citing *Contreras,* 656 F.2d at 1274–75). Nonetheless, while the guidelines are not necessarily dispositive, they are instructive.

The trier of fact must consider the statistics in light of all the evidence. *See Anderson,* 470 U.S. at 573–574, 105 S.Ct. at 1511–1512. Whether the statistics are undermined or rebutted in a specific case would normally be a question for the trier of fact. *Compare Anderson,* 470 U.S. at 573, 105 S.Ct. at 1511 *with Teamsters,* 431 U.S. at 339–340, 97 S.Ct. at 1856–1857.

■ We now turn to the statistical evidence. Of the 79 women who took the 1975 written test, ten, or roughly 13 percent, scored high enough on a combination of written and appraisal scores to be considered candidates for promotion. Four women, or roughly five percent of the women who took the examination, were ultimately promoted. Of the 1312 men who took the 1975 written test, 250, or approximately 19 percent, received sufficiently high combined scores to be eligible for promotion. 127 men, or approximately ten percent, were ultimately promoted. *See* Appendix B. These figures clearly show a violation of the 80 percent rule. The women's pass rate—the number of persons placed on the eligibility list over the number who took the test—was only 66 percent of the men's pass rate, while the women's promotion rate—the number of

people promoted over the number who took the test—was less than 53 percent of the men's promotion rate.

■ The results of the 1977 examination were similar. Of the 102 women who took the 1977 written test, 18, or roughly 18 percent, scored high enough on a combination of written and appraisal scores to be considered candidates for promotion. Five women, or roughly five percent of the women who took the examination, were ultimately promoted. Of the 1259 men who took the 1975 written test, 331, or approximately 26 percent, received sufficiently high combined scores to be eligible for promotion. 93 men, or approximately seven percent, were ultimately promoted. *See* Appendix B. These figures show a violation of the 80 percent rule for both the 1977 examination and the promotions based on it. The women's pass rate was only 67 percent of the men's pass rate, while the women's promotion rate was only 66 percent of the men's promotion rate.

It is therefore clear that whether one looks at pass rates or promotion rates for 1975 or 1977, women's success rate was considerably lower than 80 percent of men's success rate. It follows that this is also true if the results of the 1975 and 1977 examinations are aggregated.

The County argues that the violation of the 80 percent rule is not sufficient to support a finding of disparate impact under *Clady* because, according to the County, the numbers involved are too small to yield statistically significant results. We agree as a general matter that a violation of the 80 percent rule is not always statistically significant. In this case, however, the plaintiffs have demonstrated that the differences in the performances of men and women are statistically significant. Plaintiff's experts showed by several generally accepted techniques that the adverse impact of the examinations and the bottom-line adverse impact were statistically significant. *See* Appendix A.[1]

---

1. For example, plaintiff's expert showed that the violations of the 80 percent rule were significant at the .05 level. This means that the disparate success rates of men and women "would be the result of chance only one time in twenty." *Contreras,* 656 F.2d at 1273 n. 3.

The County contends that the district court should not have credited the disparate impact data because a small number of women passed the tests and were promoted. The County points to our statement in *Contreras* that the statistical significance of a disparate impact showing in that case was undermined by the fact that if only three more members of the plaintiff group (Spanish-surnamed applicants) had passed the examination there would have been no violation of the 80 percent rule. 656 F.2d at 1273 & n. 4. The County correctly points out that if only one additional woman had been promoted as a result of the 1977 examination, there would have been no violation of the 80 percent rule for that year. The same would be true for 1975 if just three more women had been promoted as a result of that year's examination.[2]

In our view, the County misinterprets the significance of our statement in *Contreras*. In *Contreras*, not only was the number of people in the plaintiffs' group who succeeded on the examination small, the number who took it was small as well. Only 17 Spanish-surnamed applicants took the examination in question in *Contreras*, *id.* at 1273, whereas in the present case 79 women took the 1975 examination and 102 women took the 1977 examination. Generally, it is the combination of small sample size and small success rate that calls into question the statistical significance of a violation of the 80 percent rule. Moreover, in *Contreras*, there was no showing of statistical significance at the .05 level. *Id.* Here, there was. *See ante*, at n. 1. Such a showing indicates that—*taking into account the effect of the small numbers*— the disparity is statistically significant.

The County nonetheless criticizes the finding of statistical significance because it is based in part on combining the results of the 1975 and 1977 examinations to yield the significance data. Yet, the courts have repeatedly looked at trends from past examinations to see if the total pass rate

showed evidence of discrimination. *See Ezell v. Mobile Housing Bd.*, 709 F.2d 1376, 1382 (11th Cir.1983); *Boston Chapter NAACP v. Beecher*, 504 F.2d 1017, 1021 (1st Cir.1974). Moreover, the County's own experts at trial aggregated data from the two exams because, as one of them stated, it produces a "more powerful test" and increases the number of observable cases. Bouman's aggregation of the 1975 and 1977 examinations was therefore permissible.

The County also criticizes the disparate impact analysis appellee submitted to the trial court because women who were eligible to take the examination but did not actually take it were included in the pool for analysis. We need not decide whether such evidence should have been admitted, because even if the analysis is limited only to actual test takers, the aggregate promotion rates for 1975 and 1977 show a statistically significant violation of the 80 percent rule.

Last, the County argues that if data from multiple years are to be aggregated, the results of the 1980 examination—on which women's performance improved—should be included in the calculations. The County cites *Clady*, 770 F.2d at 1428, for the proposition that a flexible interpretation of the Uniform Guidelines means that a determination of adverse impact should not result from a single administration of an exam, but from an analysis over time. This reading of *Clady* is unsupported by its text. In *Clady* we stated that we will not rigidly adhere to the 80 percent rule, but will consider evidence of discrimination whenever it is "significant" or "substantial." *Id.* Evidence that the 80 percent rule was violated which is significant at the .05 level for the 1975 and 1977 examinations is substantial evidence that the court may take into account. *Clady* imposed no requirement that subsequent examinations also be considered.

2. If one additional woman had been promoted as a result of the 1977 examination, the ratio of women's success rate to men's success rate would have been (6/102)/(93/1259), or 0.80. If three additional women had been promoted as a result of the 1975 examination, the ratio of women's success rate to men's success rate for that year would have been (7/79)/(127/1312), or 0.92.

Moreover, the 1980 examination was administered *after* Bouman brought suit. We have recognized that "[l]ooking at the [employer's] record of performance after the courts have been asked to intervene is irrelevant to the merits of a discrimination claim and can be highly misleading." *Gonzales v. Police Dept., City of San Jose*, 901 F.2d 758, 761 (9th Cir.1990). Inclusion of the 1980 data not only would have failed to improve the reliability of the 1975 and 1977 data, but would have improperly obscured the discriminatory effects of the earlier examinations.

This evidence indicates that the verdict of disparate impact based on the 1975 and 1977 examinations was supported by substantial evidence.

### D. *Job Relatedness Defense to Disparate Impact Claim*

█ Defendants-appellants failed to produce any evidence tending to show that the 1975 and 1977 examinations were related to legitimate job requirements. They contend, instead, that because Bouman delayed in bringing her claim, the County no longer has the validating documentation that would have shown that the 1975 examination was not discriminatory. Such evidence, appellants claim, was lost or destroyed in the normal course of business. Accordingly, the County argues, the doctrine of laches bars Bouman's disparate impact claim.

Appellants contend that because Bouman did not file a discrimination charge after appealing to the Director of Personnel about her score on the 1975 examination, the laches defense applies. However, "[i]t is extremely rare for laches to be effectively invoked when a plaintiff has filed his [or her] action before limitations in an analogous action at law has run." *Shouse v. Pierce County*, 559 F.2d 1142, 1147 (9th Cir.1977). Here, as we noted above, the period for filing an analogous legal claim is 300 days. Bouman filed within 300 days of the applicable date for the limitations period, May 21, 1977.

This is not one of those "rare" cases in which laches applies despite the fact that

the analogous statute of limitations has not run. The district court found that the County presented no evidence that the alleged supporting documentation would have existed had the claim been filed earlier. Mr. Hokama testified on behalf of the County that a technical report once existed that supported the validity of the examination. The district court was entitled to find, and did find, that this testimony was not credible. Moreover, even if the evidence had existed, it is reasonable to expect appellants to have maintained this material for three years since the examination was being used as the basis for promotions for the two years following its administration. Consequently, the district court's finding that the defendants' failure to produce validation data is not attributable to any delay by Bouman is not clearly erroneous.

Although the County offered no validation evidence, the County did offer expert testimony that the statistical differences in performance between men and women correlated with other factors. In particular, the County's expert offered evidence that if one looks at individuals who were hired at approximately the same time and considers individuals with comparable prior experience with departmental examinations, there is no statistically significant disparity between the performance of men and women. According to the County's expert, the longer a test-taker has been a Deputy Sheriff the higher he or she is likely to score on the sergeant examination, and second-time test-takers score higher, on the average, than first-time test-takers. Thus, the County contends that the disparity in performance between men and women generally is attributable to the fact that, on the average, women had fewer years of experience than men and were more likely than men to be first-time test-takers.

The district court rejected the County's analysis based on its general view that Bouman's experts were more believable, without actually stating that the County's expert was incorrect in his assessment that the disparate performance correlated with disparate experiences. A district judge may accept some statistical inferences and

reject others based upon his perception of the oral and documentary evidence before him. *See Contreras,* 656 F.2d at 1273. However, we need not decide whether the district judge was entitled to reject the statistical evidence offered by the County on this point, because we find the County's explanation inadequate for an entirely separate reason.

■ Once Bouman proved a *prima facie* case of disparate impact, the County was obligated to validate the examination by showing that it is a realistic measure of job performance. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 426–427, 95 S.Ct. 2362, 2375–2376, 45 L.Ed.2d 280 (1975). Even assuming that the County's expert successfully demonstrated that the disparate impact in this case resulted from the fact that men had more experience as Deputy Sheriffs and in taking the examination, this in no way excused the County from its obligation to validate. The County cites no authority, nor have we found any, for the proposition that a defendant need not validate an examination if the disparate impact of that examination correlates with some facially non-discriminatory factor or factors. After all, the whole point of a disparate impact challenge is that a facially non-discriminatory employment or promotion device—in this case an examination—has a discriminatory *effect.* It would be odd indeed if a defendant whose facially non-discriminatory examination which has a disparate impact could escape the obligation to validate the examination merely by pointing to some *other* facially non-discriminatory factor that correlates with the disparate impact. The County's failure to validate cannot be excused simply by the correlation between success on the examination and experience.[3]

Thus, there was no evidence in the record of a legitimate business justification for the use of the 1975 and 1977 examinations. Consequently, the district court did not err in concluding that the significant adverse impact on women of those examinations was the result of discrimination.

### E. *Bouman's Retaliation Claim*

The County argues that the district court incorrectly ruled in favor of Bouman on her charge of retaliation in response to filing a complaint with the EEOC. A finding of discriminatory intent in a Title VII case is a question of fact, reviewed under the clearly erroneous standard. *Jauregui v. City of Glendale,* 852 F.2d 1128, 1132 (9th Cir. 1988).

The district court found that the County retaliated against Bouman for filing a complaint with the EEOC and that it was well known throughout the Department that she had engaged in Title VII protected activity. Bouman testified that she applied for a transfer to the Norwalk station after having been turned down for a transfer to the Lakewood station. After she was denied the Norwalk transfer, she called the Norwalk station captain, Captain Portesi. Bouman testified that Portesi told her she

---

**3.** We note that the County has not even attempted to validate the supposedly neutral factors of years of experience and familiarity with departmental examinations. While we in no way suggest that evidence that these factors were significantly related to job performance would have excused the County from its obligation to validate the *examination,* the County's failure to offer such evidence provides an additional basis for our conclusion that the County did not meet its production burden with respect to job-relatedness.

It is hardly self-evident that promotions based on years of experience serve legitimate employment goals. A certain level of experience may result in a Deputy Sheriff's attaining skills that are useful for a sergeant. However, the County has made no effort to show what level of experi-ence is required or to identify what skills Deputy Sheriffs gain through experience. For all we know, too much experience may impede one's ability to perform the duties of sergeant. Deputy Sheriffs may experience "burn-out" or become jaded to their duties over time. We can only speculate as to the effect of experience because the County failed to introduce any evidence at all on the question.

The County also failed to produce any evidence that familiarity with departmental examinations makes an applicant a better sergeant. Indeed, it would have been remarkable if the County had produced such evidence. In our view, the fact that applicants who were familiar with departmental examinations scored higher, on the average, than those who were not, casts additional doubt on the value of the examination.

should "stop doing things like this" [filing grievances] and that he was aware of the fact that she had filed complaints with outside governmental agencies. He also admitted that his lieutenant pressured him into not accepting someone who had filed grievances.

The evidence showed that members of the Sheriff's Department were aware of Bouman's EEOC complaint and denied her an employment benefit because she had exercised her right to file with the agency. The district court evaluated the evidence of retaliation and concluded that her supervisors had a discriminatory motive in refusing plaintiff's request for a transfer. To the extent that this conclusion rested on an assessment of the credibility of the witnesses, the district court's evaluations of which witness was most credible should be given deference. *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511.

■ Appellants argue that Bouman should have filed a charge with the EEOC about her retaliation complaint and that since she did not her claim is barred. In *Stache v. International Union of Bricklayers*, 852 F.2d 1231 (9th Cir.1988), *cert. denied*, —— U.S. ——, 110 S.Ct. 64, 107 L.Ed.2d 32 (1989), the court rejected a retaliation claim where the EEOC charge named only the local union and the suit named the international union, a different party. The court found that a claim against the international union was not "like or reasonably related to the allegations of the EEOC charge" against the local union. *Id.* at 1234. This holding does not, however, prohibit a finding of "reasonable relation" between a discrimination and a retaliation complaint against *the same party*.

The County also disagrees with the district court's finding that the retaliation claim is "reasonably related" to her prior EEOC charge of discrimination and thus may be considered under *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973) and *Ramirez v. National Distillers and Chemical Corp.*, 586 F.2d 1315, 1318–1319 (9th Cir.1978). The evidence that she was told that she should stop filing grievances shows that her retaliation claim is "reasonably related" to her prior sex discrimination claim.

■ The County contends that plaintiff showed no adverse employment decision resulting from the denial of her transfer. Bouman must show that the County took some action in response to her exercise of Title VII rights. *Gunther v. County of Washington*, 623 F.2d 1303, 1314 (9th Cir. 1979), *aff'd*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). In *Ruggles v. California Polytechnic State University*, 797 F.2d 782, 786 (9th Cir.1986), we held that "the closing of a job to plaintiff and the loss of opportunity even to compete for the position" established an adverse employment decision resulting from retaliation. Bouman need not show that she was fired, demoted or suffered some financial loss as a result. The fact that the position was not made available to her because of her involvement in protected activities is sufficient.

The County also argues that the reason Bouman was not transferred was her "attitude, immaturity and failure to understand her role as a Deputy Sheriff." The district court concluded that these reasons were a pretext for discriminatory motives. The lower court noted that Bouman had received excellent performance evaluations near the time when she asked for a transfer. The district court also found persuasive evidence that she was reprimanded for an incident occurring outside the station involving her child, while her husband, who was also a Sheriff, received no such reprimand. The judge concluded that it appeared that females were treated differently with regard to such matters. On the basis of the evidence presented and the reasons given by the district court, the conclusion that the proffered reasons for refusing the transfer were pretextual is not clearly erroneous.

## IV. Federal Jurisdiction over FEHA Claims

■ The County contends that the federal courts have no subject matter jurisdiction over claims brought under the California Fair Employment and Housing Act

("FEHA"), Cal.Gov.Code § 12900 *et seq.* (1980). The statute states that California superior courts shall have jurisdiction over claims under the Act. Cal.Gov.Code § 12980. The County claims that this confers exclusive jurisdiction in the state court and that pendent jurisdiction does not apply. However, the statute does not state that its jurisdiction is exclusive, merely that state courts are authorized to hear such claims.

Federal courts may exercise pendent jurisdiction over state law claims arising from a nucleus of facts common to both the state and federal claims. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Bouman's state discrimination claim is related to her federal Title VII claim and can be adjudicated in federal court under the doctrine of pendent jurisdiction.

The County also argues that Bouman's FEHA claim is barred by the statute of limitations. Plaintiff filed her complaint with the Department of Fair Employment and Housing on January 10, 1978. The DFEH issued an accusation on January 17, 1979, and then on September 21, 1979, notified Bouman that her investigation had been terminated and that she had one year from that date to file a civil action. The County contends that under Cal.Gov.Code § 12981, since the department issued the accusation more than 150 days after the complaint was filed, it was divested of jurisdiction to issue a right-to-sue letter. However, a person receiving a right-to-sue letter has one year thereafter to file a claim. *Carmichael v. Alfano Temporary Personnel*, 223 Cal.App.3d 363, 272 Cal. Rptr. 737 (1990), *reh'g. denied*, 224 Cal. App.3d 85 (1990). Bouman's filing on April 7, 1980 complies with FEHA's requirements that she sue within one year of receiving the required letter and is, therefore, not time-barred.

## V. The County's Liability under 42 U.S.C. § 1983

The County argues that for it to be liable under 42 U.S.C. § 1983, Bouman must prove that officials with final policymaking authority approved of or tolerated the alleged discriminatory policy. *See St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 923–24, 99 L.Ed.2d 107 (1988). California law dictates that a county may exercise its powers only through the Board of Supervisors or through agents and officers acting under the Board's authority or authority conferred by law. Cal.Gov.Code § 23005. The Los Angeles County Charter specifies that the County's powers may be exercised only by the "Board of Supervisors or by agents and officers acting *under their authority* or by authority of the law of this Charter." Los Angeles County Charter, Article I, § 2 (emphasis added). The County argues that there is no allegation or proof that the Board of Supervisors or persons authorized by them committed wrongful acts.

Bouman contends that Sheriff Block and Sergeant Knox are the final policymakers. She contends that Knox, as the Chief of the Administrative Division and head of the department responsible for the examination and employment practices, was the driving force behind the violation of her constitutional rights.

The Supreme Court announced in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 701, 98 S.Ct. 2018, 2041, 56 L.Ed.2d 611 (1978), that municipalities are not immune from liability under § 1983. However, it rejected the *respondeat superior* theory and held that municipalities could be held liable only when an injury was inflicted by a government's "lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694, 98 S.Ct. at 2037.

"The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Pembaur v. Cincinnati*, 475 U.S. 469, 482–83, 106 S.Ct. 1292, 1299–1300, 89 L.Ed.2d 452 (1986). The example *Pembaur* uses to illustrate that authority to make policy confers liability under § 1983 is directly on point with this case:

Thus, for example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff *is* the official policymaker, *would* give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board. However, if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions *would* represent county policy and could give rise to municipal liability.

*Pembaur*, 475 U.S. at 483 n. 12, 106 S.Ct. at 1300 n. 12 (emphasis in original). Thus, it is crucial to determine whether the Sheriff or members of his department have been delegated the authority to make decisions about employment *policy.*

■ Identification of officials with policymaking authority is a question governed by state law. *Praprotnik*, 485 U.S. at 124, 108 S.Ct. at 924. The district court did not address this question. Were the question purely one of law, we might have occasion to resolve it on this appeal. *Cf. Salve Regina College v. Russell*, —— U.S. ——, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991) (in diversity case, federal appeals court should not defer to federal district court's interpretation of law of the state in which district court is located). However, the question whether the Board of Supervisors delegated to the Sheriff's Department the authority to make employment policy decisions involves unresolved issues of fact as well, and the district court made no factual

findings with respect to such issues. Thus, we remand to the district court for a determination under California and Los Angeles County law of who has authority to make employment policy and for a finding of fact as to whether the Board of Supervisors delegated that authority to the Sheriff's Department.

■ In addition to examining the applicable state and county statutes, the district court should examine whether "a subordinate's decision is subject to review by the municipality's authorized policymakers." *Praprotnik*, 485 U.S. at 127, 108 S.Ct. at 926. If the authorized policymakers retain the authority to measure the official's conduct for conformance with *their* policies, or if they approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final. *Id.* (emphasis in original).

■ Even if the district court finds that the alleged discriminatory practices did not arise from a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," Bouman may proceed against the County on a theory that the County engaged in a "custom" of discrimination. *Monell*, 436 U.S. at 690–691, 98 S.Ct. at 2035–2036. If a practice is so permanent and well-settled as to constitute a "custom or usage" with the force of law, a plaintiff may proceed in a § 1983 action, despite the absence of written authorization or express municipal policy. *Praprotnik*, 485 U.S. at 127, 108 S.Ct. at 926 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168, 90 S.Ct. 1598, 1613–1614, 26 L.Ed.2d 142 (1970)). Bouman contends that she proved that the Sheriff's Department engaged in pervasive sexually discriminatory practices over a prolonged period of time. Yet, there is no finding in the Memorandum After Trial or the Amended Memorandum After Trial of a "custom" of discrimination in the Sheriff's Department. As an alternative theory upon which the County of Los Angeles may be liable, we remand to the district court for a determination of whether the discrim-

inatory practices constituted a "custom," for which the County may be held liable.

## VI. Class Certification

The determination as to whether to certify a class is committed to the discretion of the district court and will not be disturbed on appeal absent a showing of abuse of discretion. *Marshall v. Holiday Magic Inc.*, 550 F.2d 1173, 1176 (9th Cir.1977).

The County argues that the district court erred in certifying the class action in this case by failing to hold an evidentiary hearing to determine what common questions of law and fact existed between plaintiff and the purported class. The County contends that the court did not engage in a "rigorous examination" of the factors enumerated in F.R.C.P. 23(a) regarding the establishment of a class action. That rule requires the litigant to establish "numerosity, commonality, typicality and adequacy of representation" of the class members. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982).

The district court asked the parties to brief the issue of the class certification and announced its ruling on November 3, 1980. The County contends that Judge Takasugi failed to state adequate grounds for his decision. A review of the transcript indicates that the judge reviewed each of the elements required for a class under Rule 23(a) and stated briefly why each was satisfied.

■ In *Falcon*, the Court required a "specific presentation identifying the questions of law or fact that were common to the claims of respondent and of the members of the class he sought to represent." *Id.* at 158, 102 S.Ct. at 2371. On this basis, the County objects to the lack of an evidentiary hearing on the common questions of fact and law between the plaintiff and the proposed class. This contention is unsupported. The district court asked the parties to brief the issue of class certification, including the commonality question. When the judge announced his ruling on November 3, 1980, he stated that there were common questions in that "plaintiff is attacking defendants' discriminatory practices against females, and this is not just as it applied to plaintiff only." This statement identifies a common legal issue, discrimination against women, and a common factual problem, discrimination as applied in the Sheriff's Department. The district court analyzed whether the required elements were present to certify a class action and did not err in granting that certification.

The County also contends that the findings of intentional discrimination against Bouman indicate that there was no commonality between her and the certified class. They argue that she was not, therefore, a typical representative of the class. The discrimination findings, however, can be read as supporting the class' claims as well as Bouman's. *See Nehmer v. United States Veterans Administration*, 118 F.R.D. 113, 125 (N.D.Cal.1987) (all plaintiffs have suffered the same kind of harm and are proper plaintiffs).

Moreover, findings of this nature do not undermine the conclusion that the class certification was proper. *Bernard v. City of Palo Alto*, 699 F.2d 1023, 1026 (9th Cir.1983). The ultimate disposition of the class representative's claim does not affect the disposition of the class' claim. *Id.* The district court's class certification was proper.

## VII. Injunctive Relief

As injunctive relief the district court ordered the County to develop a "validated" sergeant examination and to hire female sergeants consistent with their percentage representation as deputies until appellants instituted validated selection procedures. The County contends that this relief was improper because any showing of adverse impact was *de minimus* so that the relief is not proper. Appellants also argue that the subsequent sergeant examinations promoted more women so that the violation can now be considered moot under *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979).

■ So long as a district court's decision to issue injunctive relief is not based

on an incorrect interpretation of the law, it is reviewed for an abuse of discretion. *E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1519 (9th Cir.1989).

Before the injunction was ordered, both parties submitted briefs on the issue. After considering their arguments, the district court ordered that a permanent injunction be issued, requiring, among other things, that appellants develop a valid sergeant examination.

 District courts have broad equitable powers to fashion relief for violations of Title VII that will eliminate the effects of past discrimination. *Teamsters*, 431 U.S. 324, 97 S.Ct. 1843. A court may order injunctive relief where there are not sufficient assurances that the employer is unlikely to repeat its discriminatory actions. *E.E.O.C. v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1544–45 (9th Cir. 1987). Even though the performance of women may have improved on the 1980 examination, there is still no showing that it is a valid, job-related test. Furthermore, as we stated in *Goodyear Aerospace*, curative action at the eleventh hour does not prove that the employer is unlikely to discriminate again. *Id.* A claim for injunctive relief is not moot unless it can be said with assurance that the violation will not recur. *Davis*, 440 U.S. at 631, 99 S.Ct. at 1383.

 Furthermore, Bouman offered statistically significant proof of discrimination. This evidence is not *"de minimus"* as defendants contend, but meets federal standards for establishing a *prima facie* case of discrimination. Defendants were unable to advance a non-discriminatory reason for the results which occurred. The findings of discrimination made it proper to order injunctive relief.

### VIII. Punitive Damages Award

Punitive damages of $106,523.60 were assessed against appellant John Knox, Chief of the Administrative Division of the Los Angeles County Sheriff's Department. The County contests this award as excessive and not based on any findings of fact.

Under *Smith v. Wade*, 461 U.S. 30, 46–47, 103 S.Ct. 1625, 1635–1636, 75 L.Ed.2d 632 (1983), "punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." The district court did not state its reasons for the punitive damages award against Knox. However, in the amended memorandum after trial, the district court noted that Inspector White and Commander Knox testified that until a few days before trial, they had not seen the report which showed sergeant vacancies to which Bouman could have been promoted. The district court found this testimony not credible and defendant Knox's testimony regarding the lack of vacancies "highly suspect, sufficient to make a finding of malice, oppression, fraud and bad faith." The court concluded that based on the evidence and relative credibility of the witnesses, vacancies existed at the time the eligibility list expired and sex discrimination was a factor in Bouman's promotion.

 It is unclear whether the district court based the punitive damages solely on Knox' testimony at trial or on his allegedly discriminatory actions which prevented Bouman's promotion. *Briscoe v. Lahue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1982) prohibits plaintiffs from bringing suit under 42 U.S.C. § 1983 based on allegedly perjurious testimony at trial or during pre-trial proceedings. While perjurious testimony cannot form the basis for a cause of action under § 1983, it has not been decided whether in a proper § 1983 action, perjury could form the basis for assessing punitive damages. However, this case involves testimony which is only "highly suspect," not perjurious.

 We need not reach the question whether a punitive damages award would be justified in an ongoing § 1983 prosecution where the witness has given "highly suspect" testimony, because the record indicates that there were other (not well-articulated) reasons which may justify the imposition of punitive damages. The dis-

trict court concluded that Knox's actions before trial constituted unlawful sex discrimination. The district court suggested that Knox may have suppressed the vacancy report or refused to promote Bouman despite his knowledge of vacancies. We remand to the district court for an articulation of its reasons for imposing punitive damages and a discussion of why Knox's actions were "evil" or exhibited "reckless indifference" to Bouman's civil rights such as to justify punitive damages under § 1983.

A punitive damages award may also be made under California law for "oppression, fraud or malice." Cal.Civ.Code § 3294 (West 1970); *Commodore Home Systems, Inc. v. Superior Court,* 32 Cal.3d 211, 215, 185 Cal.Rptr. 270, 649 P.2d 912 (1982). On remand, the district court should articulate the reasons, if any, why Knox's behavior evidenced sufficient "oppression, fraud or malice" to justify punitive damages.

■■■ In the event that the district court on remand assesses punitive damages, we address two other questions appellants raise about the punitive damages award. Appellants contest the amount of the award, $106,523.60, as excessive. That amount is double the back-pay award. A reviewing court must uphold an award of damages whenever possible and all presumptions are in favor of the judgment. *Bertero v. National General Corp.,* 13 Cal.3d 43, 61, 118 Cal.Rptr. 184, 529 P.2d 608 (1974).

■■■ While California law requires that punitive damages bear a reasonable relationship to compensatory damages, there is no fixed ratio or formula for determining the proper proportion between the two. *Transgo Inc. v. AJAC Transmission Parts Corp.,* 768 F.2d 1001 (1985) (citing *Liodas v. Sahadi,* 19 Cal.3d 278, 284, 137 Cal.Rptr. 635, 562 P.2d 316 (1977)), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). The amount of compensatory damages is a relevant yardstick by which to measure the appropriateness of a punitive award. *Moore v. American United Life Co.,* 150 Cal.App.3d 610, 636–637, 197 Cal.Rptr. 878 (1984). Twice the

compensatory damages is a reasonable award. *See Gagnon v. Continental Casualty Co.,* 211 Cal.App.3d 1598, 1603–1605, 260 Cal.Rptr. 305 (1989) (upholding punitive to compensatory damages ratio of 190.5 to 1) (citing *Wetherbee v. United Ins. Co. of America,* 18 Cal.App.3d 266, 270–272, 95 Cal.Rptr. 678 (1971)). A punitive damages award of twice the back-pay (1971)). A punitive damages award of twice the back-pay award is reasonable and an award of that magnitude would be affirmed.

■■■ The County also argues that Knox's recent retirement from the Sheriff's Department vitiates the deterrent function the punitive damages award is supposed to serve and indicates that punitive damages were not justified. Punitive damages are awarded to punish the defendant for his outrageous conduct and to deter him and others like him from similar conduct in the future. *Wade,* 461 U.S. at 54, 103 S.Ct. at 1639. In this case, however, the deterrent function is not lost due to Knox's retirement since the award would send a message to others in the Sheriff's Department that they may be liable individually for their actions in violation of a person's civil rights. The district court did not abuse its discretion in assessing punitive damages against Knox, despite his recent retirement.

## IX. Back Pay for the Class

Bouman argues that the class members should have been awarded back pay for the County's failure to promote them because of discriminatory practices. The district court gave no reasons why it denied the class back pay.

■■■ Where discrimination is found, back pay should be denied only for reasons which would not frustrate the purpose of eradicating discrimination. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975). The award of back pay is discretionary and vested in the district court. *Id.* However, a district court which declines to award back pay must carefully articulate its reasons for doing so. *Id.* at n. 14.

We remand this issue to the district court for an elaboration of the reasons why the class was denied back pay. Once the reasons are articulated, a reviewing court can determine whether the reasons for denying back pay meet the standards set forth in *Albemarle* for the denial of such relief. *Id.* at 421–425, 95 S.Ct. at 2373–2375.

## X. Attorney's Fees

■ We review the district court's determination of the amount of the attorney's fees award for abuse of discretion. *Jordan v. Multnomah County,* 815 F.2d 1258, 1261 (9th Cir.1987). The abuse of discretion standard applies not only to the basic fee computation, but also to the multiplier. *Hall v. Bolger,* 768 F.2d 1148, 1150 (9th Cir.1985).

### A. *The Lodestar Calculation*

■ Attorney's fees may be awarded by calculating the lodestar amount, the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate. *Lindy Bros. Bldrs. Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 117 (3rd Cir.1976). This court reviews the award to see if it was the "product of reasonable hours times a reasonable rate." *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984).

■ The County attacks the lodestar rate by questioning Bouman's attorney Harley's expertise and by finding fault with his time records. This attack is based upon an auditor's examination of the time records. Among other things, the auditor complains that he is unable to compare Harley's fees with those charged other clients because such information was blocked from the client information sheets. Yet, the parties had earlier stipulated to such a procedure to protect their clients' confidences. The County admits that the time records produced were very detailed. Appellants produced no evidence to show that the district court committed clear error in calculating the hourly base.

The County also attacks the rate used to calculate the lodestar amount. Bouman submitted several declarations stating that the rate was the prevailing market rate in the relevant community. This evidence is sufficient to establish the appropriate rate for lodestar purposes. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210–1211 (9th Cir.1986). The district court did not commit clear error in adopting these rates.

■ The County also attacks the award to the extent that an adjustment was made for lost interest or inflation. The district court used current hourly rates to compensate for the delay in receiving payment. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 716, 107 S.Ct. 3078, 3081–3082, 97 L.Ed.2d 585 (1987). This adjustment would also take into account lost interest and inflation. It was not an abuse of discretion for the district court to adjust the rate to compensate for the delay.

### B. *Multiplier for Attorney's Fees Award*

■ The County contests the district court's decision to enhance the lodestar amount by one-third to account for the risk of non-payment Bouman's lawyers faced if they lost the case. In *Delaware Valley,* 483 U.S. at 730–731, 107 S.Ct. at 3089–3090, the Court held that a multiplier was permissible to compensate for the risk that no fee will be won if the district court makes specific findings that without that enhancement plaintiff would have faced substantial difficulties in securing counsel.

In the *Bouman* case, the district court ordered an enhancement of at least one-third of the fees attributed to Mr. Harley. Judge Takasugi found that Bouman contacted at least 16 lawyers, all of whom declined to take her case because there was little or no prospect of earning a fee. It also found that Bouman would have faced even more difficulties securing counsel if no multiplier was available. The district court awarded a one and one-third multiplier based upon this evidence and a finding that the market charges a premium for contingent fee cases. The specific reasons

set forth justify multiplying the lodestar by a minimum of one and one-third and satisfy the requirements under *Delaware Valley.*

### C. *Bouman's Challenge to the Lodestar Multiplier*

Bouman on cross-appeal contends that she should have been awarded a multiplier of 2.0 or double the lodestar amount. Bouman relies on *Fadhl v. City and County of San Francisco,* 859 F.2d 649, 650–651 (9th Cir.1988), where the court upheld a multiplier of 2.0 to reflect the market treatment accorded to contingency cases in San Francisco. We review for abuse of discretion the district court's decision to use a one and one-third multiplier to calculate the attorney's fees award.

The district court concluded that Bouman met the test under *Delaware Valley* for an enhancement of attorney's fees. Like Fadhl who visited 34 attorneys before finding one who would take her case, *see Fadhl,* 859 F.2d at 652, Bouman presented evidence that at least 16 lawyers turned her down before she found Mr. Harley. Judge Takasugi ordered an enhancement "by at least one-third of the fees attributed to Mr. Harley."

Bouman argues that the Los Angeles market is comparable to San Francisco's and that her attorneys deserve a 2.0 multiplier. Bouman submitted to the trial court a declaration from the attorney in *Fadhl,* Guy Saperstein, that the market rate is the same in San Francisco and Los Angeles. Based on his experience as a litigator and an expert on attorney's fees, Saperstein concluded that a multiplier of at least 2.0 is necessary to encourage lawyers in Los Angeles to take contingent fee Title VII cases. That argument appears reasonable to us.

The *Fadhl* case was decided in July 1988, only one month before the district court issued the attorney's fees award. The district court makes no mention of *Fadhl,* nor does it discuss the comparability of market conditions in Los Angeles and San Francisco. We agree that Bouman is entitled to at least a one and one-third multiplier on Mr. Harley's time. We remand, however, for the district court to consider evidence of the market conditions in Los Angeles and determine whether she is entitled to the 2.0 multiplier she has requested or some other multiplier in excess of the one and one-third figure the district court judge used.

### D. *Attorney's Fees Award for Hunt and Herman*

The County challenges the award of attorney's fees for the 30 hours expended by Mr. Herman and the 50 hours expended by Mr. Hunt on the case. The district court's determination of the amount of the attorney's fees award is reviewed for abuse of discretion. *Jordan v. Multnomah County,* 815 F.2d 1258, 1261 (9th Cir.1987).

 The County claims that Harley, Bouman's primary lawyer, is not entitled to hire another lawyer. This claim is unsupported by any case law. Common experience indicates that lawyers often hire other lawyers to help them with specific issues in the case. The County also contends Hunt has not provided enough detail as to how his time was spent. The district court's reduction in the number of hours expended by Hunt and Herman, to the extent they acted as experts and not attorneys, indicates that the district court considered Hunt's time spent on the case in some detail. Accordingly, the finding awarding attorney's fees based on Hunt's work is not clearly erroneous.

The County challenges the award of fees for Herman's time because his role does not justify a multiplier. Appellants recall only one appearance by Herman at a settlement conference in chambers. However, appellants' perception of what Herman did is no measure of his actual value to Bouman or of the amount of his work. The County contends that Herman's time sheets revealed that he mainly reviewed what had already been done or provided consulting services. The district court adjusted the award to account for the consulting hours. Herman's review may also have been critical to analyzing issues or documents affecting the case. The County has made no showing that the district court committed clear error by awarding attor-

ney's fees based on the legal services Herman provided.

## XI. Bill of Costs

### A. *Timely Filing of Request for Costs*

Judgment for plaintiffs was entered in this action on March 30, 1988. Bouman filed her motion for attorney's fees on April 28, 1988. The district court issued an order on August 30, 1988 that: "Plaintiffs' bill of costs shall be deemed timely if filed and served within fifteen days after the issuance of this order." Accordingly, Bouman filed a bill of costs pursuant to the district court's August 30th order on September 14, 1988.

Local Rule 16.3 for the Central District of California permits the prevailing party who is awarded costs 15 days after entry of judgment to file and serve a Bill of Costs. Time limits are set out clearly and "must be scrupulously observed by litigants." *Mollura v. Miller*, 621 F.2d 334, 336 (9th Cir.), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980). Bouman's request for costs was filed thirteen days late under the local rules.

We are empowered "for good cause shown" to enlarge the time limits prescribed by the Federal Rules of Appellate Procedure. Fed.R.App.P. 26(b). The issue is whether appellees have shown good cause for us to exercise our discretion to do so. *Id.*

■ There is no evidence in the record showing why Bouman's bill of costs was filed after the time set out in the local rules. We remand for a determination of whether there was good cause for Bouman's untimely filing for costs.

### B. *Expert Witness Fees as Costs*

The district court in its order of April 10, 1989 awarded expert witness fees as costs in the amounts of: $5,438.00 for Dr. James Kirkpatrick, $24,390.28 for Dr. Richard Harkness, $6,425.00 for Dr. Wallace Blishke, $3,555.00 for Mr. William Ruch and $74,221.22 for Mr. Richard Biddle. Bouman relies on state grounds to support the award of these attorney's fees as costs.

The County challenges those grounds and argues that under federal law she is limited to $30.00 per day for expert witness testimony.

In its amended judgment of July 8, 1988, the district court entered judgment for plaintiff and the class she represents against the County of Los Angeles, the Los Angeles Sheriff's Department, the Los Angeles County Sheriff and John Knox. Liability was found based on violations of 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1983 and Cal.Gov.Code § 12900, the California Fair Employment and Housing Act.

■ Under the California Fair Employment and Housing Act, the court may award costs to the successful party. Cal. Gov.Code § 12965(b). When a plaintiff proceeds under multiple theories and prevails on her FEPA claims, she is entitled to attorney's fees under FEPA. *See generally Ackerman v. Western Electric Co.*, 860 F.2d 1514 (9th Cir.1988); *Stache v. International Union of Bricklayers and Allied Craftsmen*, 852 F.2d 1231 (9th Cir.1988). The district court had discretion to award costs under the California statute and did not abuse its discretion in doing so.

Alternatively, Bouman argues that these costs may be awarded to a Title VII plaintiff under 42 U.S.C. § 1988. That argument is now foreclosed by *West Virginia University Hospitals, Inc. v. Casey*, ── U.S. ──, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991). Since there is an independent state ground for awarding costs, Bouman's costs were proper under § 12965(b) of the California FEPA.

## XII. Conclusion

In conclusion, we note that more than eleven years have passed since Bouman filed her case. On remand, we look for an early resolution of this case.

We REMAND to the district court for: 1) findings of fact and conclusions of law on who possesses the authority to make employment policy decisions for the Sheriff's Department; 2) a statement of reasons why back pay was denied to the class; 3) an articulation of reasons why punitive

damages are justified; 4) a determination of whether plaintiff is entitled to a multiplier of attorney's fees over one and one-third; and 5) a determination of whether there was good cause for Bouman's untimely filing for costs. If it is determined that the filing for costs was timely, the amount assessed as costs is AFFIRMED. The district court's findings and holdings on all other issues raised in this appeal are AFFIRMED. AFFIRMED IN PART AND REMANDED IN PART.

Appendix "A"

COMPUTER COUNTS OF LOS ANGELES COUNTY SERGEANT AND DETECTIVE SERGEANTS
SELECTION PROCESS[b]

| YEAR | STEP | ISSUE | STANDARD DEVIATIONS | PROBABILITY | ONE CHANCE IN | CASE |
|---|---|---|---|---|---|---|
| 1975 | Available vs. Applied (H) | Discouragement & Experience Requirements | 4.61 | .000004 | 242,671 | 48 |
| 1975 | Available vs. Applied (G) | Discouragement & Experience Requirements | 5.73 | .00000001 | 99,000,000 | 49 |
| 1975 | Applied vs. Took Written | Discouragement | 2.43 | .015113 | 66 | 50 |
| 1977 | Available vs. Applied (H) | Discouragement & Experience Requirements | 5.00 | .00000037 | 2,700,000 | 60 |
| 1977 | Available vs. Applied (G) | Discouragement & Experience Requirements | 6.52 | .000000000068 | 14,000,000,000 | 61 |
| 1975 | Took Written vs. Passed | Passing Written | 2.29 | .0121773 | 46 | 51 |
| 1975+77 | Applied* vs. Took Written | Discouragement | 2.83 | .004618 | 217 | 76 |
| 1975+77 | Took Written* vs. Passed Written and Made AP | Passing of Written | 3.07 | .002147 | 466 | 77 |
| 1975+77 | Took Written* vs. Passed Written & Passed AP & Took Oral | Passing Two Cutoffs (Written & AP) | 2.23 | .025963 | 39 | 97 |
| 1975 | Available vs. Promoted | Bottom Line | 2.70 | .006995 | 143 | 58 |
| 1977 | Available vs. Promoted | Bottom Line | 2.05 | .040251 | 25 | 71 |
| 1975 + 1977 Counting Candidates only once | | | | | | |
| | Applied vs. Promoted | Bottom Line | 2.31 | .020649 | 48 | 89 |
| | In Pool vs. Applied | Discouragement & Experience Requirements | 6.24 | .00000000042 | 2,300,000,000 | 90 |
| | Applied vs. Took 1 Written, Took 1 Written vs. Passed 1 Written | Discouragement | 2.93 | .003363 | 297 | 91 |
| | | Passing Written | 3.26 | .001100 | 909 | 92 |
| | Took Written vs. Passed Both Written & AP Cutoffs | Pass 2 Cutoffs | 2.44 | .014603 | 68 | 96 |

* and not promoted early

REVISED 4/15/86

Appendix "B"
ADVERSE IMPACT SUMMARY