19 F.3d 25
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ali T. AGHA, Plaintiff-Appellant,
v.
SECRETARY OF ARMY, Defendant-Appellee.
Ali T. AGHA, Plaintiff-Appellant,
v.
SECRETARY OF the ARMY, et al., Defendants-Appellees.
Ali T. AGHA, Plaintiff-Appellant,
v.
SECRETARY OF the ARMY, et al., Defendants-Appellees.
 Nos. 92-16921, 92-16923, 92-16924.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 22, 1994.*
Decided Feb. 25, 1994.
 
 Before: SCHROEDER, CANBY and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 In these consolidated appeals, Ali T. Agha appeals pro se the district court's judgment in favor of the Secretary of the Army, following a bench trial on Agha's claims alleging that the Defense Language Institue (DLI) discriminated against him because of his national origin, religion, age, and exercise of protected rights, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., and the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 et seq. (ADEA). Agha contends the district court erred by admitting certain evidence, and by finding that the DLI had legitimate, nondiscriminatory reasons for not rehiring him as an instructor of Arabic. He also contends the district court erred by granting judgment on the pleadings on Agha's claims under the Privacy Act, 5 U.S.C. Sec. 552a, 42 U.S.C. Secs. 1985(3) and 1986, and Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). We have jurisdiction under 28 U.S.C. Sec. 1291 and affirm.
 
 Background
 
 3
 Agha, who is Syrian of Turkish origin, worked as an instructor in the Arabic Languages Department of the Defense Language Institute (DLI) from 1961 to 1969. During that time, Agha repeatedly clashed with his colleagues. Among other things, Agha objected to the teaching of the Iraqui dialect, and to what he perceived as the dominance of Iraqis in the department. Agha resigned in January 1969, following an incident involving a physical confrontation between Agha and another instructor. Agha applied for teaching positions in the department in 1973, 1979, and 1984-85 but was not offered employment. In December 1984, he filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC) alleging that the DLI had not hired him because of his age (53 in 1973) and religion (Muslim). He filed another complaint in March 1985, alleging that the DLI had declined to hire him again because of his age, religion, national origin, and exercise of protected rights. The Secretary of the Army investigated and found no discrimination in a decision dated February 10, 1986. Agha appealed the Secretary's decision to the EEOC and, after a hearing, an Administrative Law Judge found no discrimination in his recommended decision dated July 23, 1986.
 
 
 4
 Before the Secretary had issued a decision on the 1984 and 1985 complaints, Agha filed an action in the District Court for the Northern District of California (San Jose), alleging employment discrimination based on his religion, national origin, and age (CV-85-20693-SW, filed November 18, 1985 ("the 1985 action")). Proceedings in the 1985 action were stayed pending Agha's appeal of the district court's denial of his request for appointment of counsel.[1] On October 1, 1987, while that appeal was pending, Agha filed another action in the Eastern District against the Secretary of the Army and other individuals alleging essentially the same claims. That action was transferred to the Northern District (CV-88-20471 ("the 1987 action")). Agha filed a third action in the Northern District (San Francisco) on August 18, 1988, asserting that in deciding not to rehire him the Secretary and numerous individuals had violated his rights under the ADEA, the Privacy Act, 42 U.S.C. Secs. 1985(3) and 1986, and Bivens, 403 U.S. 388 (1971) (CV-88-20774-SW, "the 1988 action"). The district court consolidated these three cases, dismissed all claims except some of the Title VII and ADEA claims, and dismissed all defendants except the Secretary of the Army, the head of the DLI. After a court trial on the merits of Agha's discrimination claims, the district court ruled in favor of the Secretary.
 
 Discussion
 
 5
 Privacy Act, Emotional Distress, Civil Rights and Bivens Claims
 
 
 6
 We review de novo the district court's orders granting judgment on the pleadings on Agha's claims under the Privacy Act, 42 U.S.C. Secs. 1985(3) and 1986, and Bivens, 403 U.S. 388 (1971). See Otto v. Heckler, 781 F.2d 754, 755 (9th Cir.1986), amended on other grounds, 802 F.2d 337 (9th Cir.1986).
 
 
 7
 Agha alleged that his former supervisors and other DLI employees had violated his rights under the Privacy Act, 5 U.S.C. Sec. 552a, by retaining in his personnel file defamatory and dated material, which they relied on to deny him employment. The Privacy Act provides a private cause of action against a federal agency where an agency fails to maintain in an individual's record information that is timely, accurate, complete, and relevant to the purposes of the record, as required by the Act, and that failure results in a determination adverse to the individual. See 5 U.S.C. Sec. 552a(g)(1)(C), 552a(e). The agency is the only proper defendant in such an action; the civil remedy provisions do not apply to individual defendants. See Schowengert v. General Dynamics Corp., 823 F.2d 1328, 1340 (9th Cir.1987); 5 U.S.C. Sec. 552a(g)(1). Agha did not name the agency responsible for maintaining his personnel files as a defendant. Thus, as to Agha's Privacy Act claims, the district court properly dismissed the individual defendants and granted the Secretary's motion for judgment on the pleadings.
 
 
 8
 The district court properly dismissed Agha's civil rights and torts claims against various members of the Arabic Languages Department alleging that they violated his constitutional right to privacy by inquiring into his past performance in the Department, making false statements about his past performance, and conspiring to prevent him from obtaining employment at the DLI. Title VII and the ADEA together provide the exclusive judicial remedies for claims of discrimination in federal employment. Brown v. General Services Admin., 425 U.S. 820, 835 (1976); see also Bush v. Lucas, 462 U.S. 367, 390 (1983) (Bivens remedies unavailable where Congress has established a comprehensive remedial scheme for violations by federal supervisors of their employees' First Amendment rights); Arnold v. United States, 816 F.2d 1306, 1311 (9th Cir.1987) (constitutional tort claims concerning alleged sexual harassment and employment discrimination precluded by Title VII); Heckler, 781 F.2d at 757 (constitutional tort claims based on supervisor's alleged job-related acts of harassment and defamation precluded by Title VII). Agha's civil rights and Bivens claims are based on the DLI's allegedly discriminatory rejection of his applications for employment. Because Title VII and the ADEA provide a comprehensive remedial scheme for employment discrimination, separate remedies are not available for those claims. See Arnold, 816 F.2d at 1311; Heckler, 781 F.2d at 757.
 
 Title VII and ADEA Claims
 
 9
 We review de novo the district court's legal conclusions concerning Agha's discrimination claims, and uphold its factual findings and its credibility determinations unless they are clearly erroneous. See Bouman v. Block, 940 F.2d 1211, 1218, 1224 (9th Cir.), cert. denied, 112 S.Ct. 640 (1991). A finding on discriminatory intent is a question of fact reviewed for clear error. Id. at 1228. We review the court's evidentiary rulings for abuse of discretion, and will not reverse absent prejudice. Id. at 1224.
 
 Proper Defendant
 
 10
 In an action alleging employment discrimination by the government, the proper defendant is the head of the agency. Vinieratos v. United States Dept. of the Air Force, 939 F.2d 762, 772 (9th Cir.1991) (Title VII); Romain v. Shear, 799 F.2d 1416, 1418 (9th Cir.1986) (ADEA), cert. denied, 481 U.S. 1050 (1987); see 42 USC Sec. 2000e-16(c); 29 U.S.C. Sec. 633a(c). Accordingly, the district court properly dismissed the defendants other than the Secretary of the Army as to the discrimination claims.
 
 1961-69, 1973, and 1979 Claims
 
 11
 Agha alleged that the DLI discriminated against him in 1961-69, 1973, and 1979. Prior to the effective date of the 1972 amendments to the Civil Rights Act, the United States had not waived its sovereign immunity with respect to claims of discrimination in employment. See Irwin v. Veterans Affairs, 498 U.S. 89, 93-94 (1990). Thus, the district court correctly determined that it lacked jurisdiction to review claims of discrimination occurring before that date. Agha is also precluded from obtaining review of his Title VII claims stemming from the DLI's failure to hire him in 1973 and 1979, because he failed to pursue his administrative remedies, as required by Title VII. See Irwin, 498 U.S. at 92 (1990); Vinieratos, 939 F.2d at 768 (9th Cir.1991); 42 U.S.C. Sec. 2000e-16.
 
 1984, 1985, and 1987 Claims[2]
 
 12
 Once a plaintiff establishes a prima facie case of employment discrimination, the defendant bears the burden of producing evidence that it had a legitimate, nondiscriminatory reason for its adverse employment decision. Block, 940 F.2d at 1223-24 (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981)). If the defendant meets that burden, the burden then shifts to the plaintiff to prove the proffered reason was pretextual. Id. The plaintiff bears at all times the ultimate burden of persuading the court that the defendant intentionally discriminated against him. Burdine, 450 U.S. at 256.
 
 
 13
 Although the DLI conceded that Agha was qualified to teach Arabic, it presented evidence that Agha had not performed satisfactorily in the department prior to his resignation. At trial, his former supervisors testified that Agha had clashed repeatedly with his co-instructors and his supervisors, and that his angry, confrontational behavior had been disruptive, divisive, and offensive. Kamil Said, who was Chair of the department between 1947 and 1973, testified that Agha frequently displayed anger and insulted other members of the department, that he encouraged ethnic hostility between Iraqis and Arabs, and Muslims and Christians. Said testified that Agha had insulted another teacher by calling him a "Telkaifi gypsy," and once gave Said "the finger." Jawdat Yonan, who joined the department as an instructor in 1958 and became Chair of the department in 1978, testified that Agha frequently became angry at his colleagues and insulted them, and that this conduct was disruptive. Agha was suspended twice for insubordination and threatening a superior, and he was denied a "within-grade" salary increase because of verbal assaults on department members. Shortly before he resigned, Agha came to blows with another teacher. Based on this evidence, the district court did not plainly err by finding that Agha had not performed satisfactorily in his job.
 
 
 14
 The DLI presented evidence the department decided not to offer Agha employment because of his past confrontational behavior. John F. Brown, who was Chair of the department in 1984, testified that he decided not to offer Agha a position after conferring with several colleagues, based on the negative assessment of those who had worked with him. This evidence supports the district court's finding that the DLI had legitimate, nondiscriminatory reasons for not selecting Agha. In addition, the record indicates that the DLI employed instructors who were Syrians, Muslims, and persons over the age of 40. In light of this evidence, the district court did not clearly err by concluding that the DLI did not intentionally discriminate against Agha. See Burdine, 450 U.S. at 256; Block, 940 F.2d at 1223-24.
 
 Evidentiary Rulings
 
 15
 Agha contends the district court erred by admitting certain "perjured" testimony concerning Agha's past conduct at the DLI. The trial judge has broad discretion to admit relevant evidence. See Fed.R.Evid. 402. As the district court stated, evidence of Agha's performance when he worked at the DLI was relevant to the decision whether to rehire him. Agha had an opportunity to challenge the credibility of the defense witnesses by cross-examining them. Accordingly, the court did not abuse its discretion by admitting the testimony. Similarly, the court did not abuse its discretion by admitting certain documents from Agha's personnel file which Agha alleged were not properly included in his file. In light of the testimony concerning Agha's conduct while employed by the DLI, Agha suffered no prejudice from the admission of the challenged documents. Accordingly, we find no reversible error based on the district court's admission of those documents. See Block, 940 F.2d at 1222.
 
 AFFIRMED.[3]
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Accordingly, appellant's request for oral argument is denied. See Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We affirmed the denial of appointment of counsel in the 1985 and 1987 actions (CV-85-20693 and CV-88-20471). Agha v. Secretary of the Army, No. 86-2710, unpublished memorandum decision, May 24, 1988, 848 F.2d 198, cert. denied, 498 U.S. 864 (1990); No. 89-15213, unpublished memorandum disposition, Dec. 5, 1990, 921 F.2d 279, cert. denied, 111 S.Ct. 2035 (1991)
 
 
 [2]
 Agha's 1984-85 Title VII claims and a 1987 ADEA claim were tried on the merits
 Agha contends the district court erred by ruling that some of his discrimination claims are barred for failure to exhaust administrative remedies or to satisfy statutory notice requirements. Because we affirm the district court's finding of no discrimination on the claims that were tried on the merits, we need not decide whether Agha met exhaustion and notice requirements as to claims that were duplicative of the claims that were tried on the merits.
 
 
 [3]
 Agha also contends the district court was biased and should have recused himself. Our review of the record reveals no evidence of bias
 Agha's motions to strike the appellees' brief and excerpts of record, to investigate appellees' response brief, to sanction Assistant United States Attorney William F. Murphy, and to expedite these appeals are denied.